JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

'08 CIV 4577

08 Civ. _____ (   )

BILLIE ANN MILLER, as Administratrix
of the Estate of her son PATRICK MILLER a/k/a
JERMELE KELLY, and on her own behalf,

       Plaintiff,

    -against-

CITY OF NEW YORK; Commissioner MARTIN
F. HORN; Deputy Commissioner RICHARD R.
WHITE; Chief of Facility Operations PATRICK
WALSH; New York City Department of Correction
Officers ALVIN MALAVE, SHIELD No. 9595;
NEIL BRESCIA, Shield No. 14044; DAVID TATE,
Shield No. 9943; "JOHN" CHAN, Shield No. 8646;
"JOHN" THOMAS, Shield No. 15210; "JOHN"
WILLIAMS, Shield No. 14217; "JOHN" BAILEY,
Shield No. 3034; "JOHN" STEVENS, Shield
No. 14562; New York Department of Correction
Captains JOSE SANTOS, Shield No. 43; MARK
GRAHAM, Shield No. 1185; Correction Officer JOHN
and JANE DOES #1-10 and Health and Hospitals
Corporation Employees JOHN and JANE DOES #11-20.

       Defendants.
-----------------------------------------------------------x

**COMPLAINT/DEMAND
FOR JURY TRIAL**



       Plaintiff Billie A. Miller (hereinafter "Ms. Miller"), as Administratrix of

the Estate of her son Patrick Miller (hereinafter "Mr. Miller"), and on her own behalf, by

her attorneys Emery Celli Brinckerhoff & Abady LLP and The Legal Aid Society, for her

Complaint alleges as follows:

### PRELIMINARY STATEMENT

       1.     On May 17, 2007, Patrick Miller, a physically healthy 31-year-old

young man was viciously and unjustifiably beaten to death by New York City

Department of Correction ("DOC") staff while held in pretrial detention by the DOC at

Bellevue Hospital's prison ward. This Complaint, arising from this tragic, outrageous, and unlawful act, seeks compensatory and punitive damages, costs, disbursements and attorneys' fees pursuant to applicable state and federal civil rights law.

## THE PARTIES

2.    Patrick Miller was killed by New York City Department of Correction officers in New York, New York. All of the events giving rise to the Complaint, including the death of Mr. Miller, occurred in New York, New York. At the time of his death, Mr. Miller was a citizen of the United States and resided in New York, New York.

3.    Ms. Miller is Patrick Miller's mother and, on May 14, 2008, she became the administratrix of his estate. Ms. Miller is a citizen of the United States and resides in Spartanburg, South Carolina.

4.    Defendant City of New York ("City") is a municipal corporation organized and existing under the laws of the State of New York which, through its Department of Correction ("DOC" or the "Department"), operates a number of detention jails. The Department, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or

customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

5. At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Horn was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

6. At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his responsibilities included supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force. Defendant White was provided on a daily basis with reports of applications of force, allegations of

unreported use of force, and other breaches of security in Department jails. Defendant White is sued in his individual capacity.

7.     At all times relevant hereto, Patrick Walsh was the Chief of Facility Operations for the Department of Correction. As Chief of Facility Operations, he was responsible for the supervision, oversight, and discipline of all uniformed staff assigned to the Department of Correction. He was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Facility Operations, Walsh is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails involving all uniformed staff. Defendant Walsh is sued in his individual capacity.

8.     Collectively, Defendants Horn, White and Walsh are referenced herein as the "supervisory defendants."

9.     At all times relevant hereto, DOC Captains Jose Santos, Shield Number 43 and Mark Graham, Shield Number 1185, and DOC Officers Alvin Malave, Shield Number 9595, Neil Brescia, Shield Number 14044, David Tate, Shield Number 9943, "JOHN" (first name unknown) Chan, Shield Number 8646, "JOHN" (first name unknown) Thomas, Shield Number 15210, "JOHN" (first name unknown) Williams, Shield Number 14217, "JOHN" (first name unknown) Bailey, Shield Number 3034, and "JOHN" (first name unknown) Stevens, Shield Number 14562 were correction officers of the DOC, acting in the capacity of agents, servants, and employees of defendant City, and within the scope of their employment as such. Collectively, both DOC Captains and Officers are referenced herein as the "individual defendants" or "officer defendants."

10.    At all times relevant hereto, defendant DOC Officers John and Jane Does #1-10 (the "DOC Doe Defendants"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and "Jane Doe," were uniformed correction staff employed by the DOC, acting in the capacity of agents, servants, and employees of defendant City, and within the scope of their employment as such.

11.    At all times relevant hereto, defendant Health and Hospitals Corporation employees John and Jane Does #11-20 (the "HHC Doe Defendants"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe" and "Jane Doe," were medical staff employed by the DOC, acting in the capacity of agents, servants, and employees of defendant City, and within the scope of their employment as such.

## JURISDICTION AND VENUE

12.    This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988 and the New York state common law and constitution.

13.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

14.    The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

15.    Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

16.    During his short life, Mr. Miller battled mental illness. He was homeless at the time of his arrest, which placed him under the custody and control of the DOC.

17.    On May 17, 2007, Mr. Miller was being detained in the prison psychiatric ward at Bellevue Hospital in Manhattan.

18.    Mr. Miller's patient records for May 17 – the day he was beaten to death – indicate that he was in good behavioral control, he responded to direction, and he was respectful of both staff and patients.

19.    At or about 5:00 p.m. that day, Mr. Miller was involved in a use of force incident in which he was brutally beaten by the individual defendants.

20.    Upon information and belief, Mr. Miller was beaten without any justification.

21.    Mr. Miller died during or immediately following the beating by the individual defendants as a result of the injuries they inflicted. He was pronounced dead approximately an hour later.

22.    Upon information and belief, several of the officer defendants, DOC Doe Defendants and HHC Doe Defendants witnessed the assault against Mr. Miller, but failed to intervene in order to stop the assault, demonstrating a deliberate indifference to a substantial risk of serious harm to Mr. Miller.

23.    On or about May 18, 2007, an autopsy was performed on Mr. Miller which revealed that before dying, Mr. Miller suffered massive trauma to his body, including but not limited to multiple blunt trauma to his head and neck, contusions to his

body consistent with being kicked repeatedly, and numerous deep hemorrhages to his posterior neck muscles and the soft tissue of his torso. Mr. Miller also suffered a mesenteric hematoma to his abdominal region, which is a rare injury, generally occurring from substantial blunt force trauma.

24.     Upon information and belief, a mesenteric hematoma typically occurs when the victim – in a particularly vulnerable position – receives a substantial blow, generally without any warning or knowledge on the part of the victim that he or she is about to be struck.

25.     The fatal injury dealt Mr. Miller by the individual defendants was a blow delivered to his heart – the sino-atrial node – with such force that it bruised his heart, killing him.

26.     In the period between the assault and his death, Mr. Miller experienced conscious pain and suffering from the beating he received.

27.     As a direct and proximate result of defendants' actions, Mr. Miller suffered severe physical and emotional injury, pain and suffering, and was deprived of his life.

28.     The individual defendants' conduct was malicious and sadistic, and manifested deliberate indifference to Mr. Miller's rights and physical well-being.

29.     The acts of the individual defendants were reckless, willful, wanton, and malicious, thus entitling plaintiff to an award of punitive damages.

30.     Prior to and at the time of the assault on Mr. Miller, there existed in the Department a pattern and practice of physical abuse of inmates by uniformed staff assigned to these jails. This pattern of physical abuse, the failure to conduct unbiased and

thorough investigations of use of force incidents, and to discipline staff meaningfully and promptly for misconduct and the long-standing failure or refusal to supervise uniformed staff, including supervisory staff, were so institutionalized as to constitute a policy or custom of tolerating and authorizing physical abuse of inmates. It is this policy or custom of abuse and cover-up that has caused the deprivation of Mr. Miller's constitutional rights.

31.    For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.

32.    For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

33.    *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the Department's use of force policy.

34.    In 1991, the City entered into a consent decree addressing conditions and practices in the prison psychiatric wards, including the Bellevue ward where plaintiff died. *Reynolds v. Sielaff*, 81 Civ. 107 (PNL) (Stipulation and Order of Settlement).. This decree required that Hospital aides, not Department of Correction staff, respond to violent actions by prisoner patients, except in emergency situations. The decree further required that the DOC review the work histories of officers assigned to the Bellevue ward, and that the commanding officer of the ward personally interview all staff members assigned to the command. These provisions were intended to remedy a conspicuous pattern of correction officer brutality on the Bellevue prison ward.

35.    Through DOC's elaborate reporting system, the supervisory defendants – Defendants Horn, White and Walsh – were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by correction officers resulting in serious injuries to inmates but have failed to take sufficient steps to curb these abuses.

36.    Through all these cases and Department reports, DOC and its supervisors, including the supervisory defendants, have been made aware of the widespread practice by correction officers of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the *de facto* refusal of the Department to bring effective disciplinary charges against its correction officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

37.    The Department and the supervisory defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

38.    The Department and the supervisory defendants have not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, they allow that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

39.    On May 14, 2008, the Surrogate's Court of the County of New York issued letters of administration of Patrick Miller's estate to Ms. Miller.

40.    Ms. Miller, in her own right, suffered emotional injuries, was deprived of her son's future services in all respects, including but not limited to the loss of love, comfort, society, attention, services and support, and she missed unpaid time away from work, grieving the loss of her son.

41.    Within ninety days after the claims alleged in this Complaint arose, a written notice of claim, sworn to by the claimant, was served upon the defendants by personal delivery of the notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

42.    At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claim has been neglected or refused.

43.    This action has been commenced within one year and ninety days after the happening of the event upon which the claims are based.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
(Against All Supervisory and Individual Defendants)

44.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

45.     By reason of the foregoing, and by assaulting, beating, and using gratuitous, excessive, sadistic, and unconscionable force against Mr. Miller, resulting in his death, and failing to prevent the officer defendants from doing the same, the individual defendants, the DOC Doe Defendants and the HHC Doe Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution to be free from gratuitous and excessive force, and from cruel and unusual punishment. These defendants' conduct manifested deliberate indifference to plaintiff's constitutional rights.

46.     Defendants Horn, White and Walsh knew and/or know that the pattern of physical abuse described above existed in the City jails prior to and including the time of the assault on Mr. Miller. Their failure to take measures to curb this pattern of brutality constitutes an acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of Mr. Miller's beating and death, and the failure of these defendants to take remedial action despite the fact that the misuse of force in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including Mr. Miller. The supervisory defendants'

11

conduct has been a substantial factor in the continuation of such violence and a proximate

cause of the constitutional violations alleged in this Complaint. These defendants'

conduct manifested deliberate indifference to plaintiff's constitutional rights.

47.    In addition, upon information and belief, defendants conspired

among themselves to deprive Mr. Miller of his constitutional rights secured by 42 U.S.C.

§ 1983, and by the Eighth and Fourteenth Amendments to the United States Constitution,

and took numerous overt steps in furtherance of such conspiracy.

48.    The individual defendants and the supervisory defendants acted

under pretense and color of state law and in their individual and official capacities and

within the scope of their respective employments as DOC officers and supervisors. Said

acts by defendants were beyond the scope of their jurisdiction, without authority of law,

and in abuse of their powers, and said defendants acted willfully, knowingly, and with the

specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. §

1983, and by the Eighth and Fourteenth Amendments of the United States Constitution.

49.    As a direct and proximate result of the misconduct and abuse of

authority detailed above, Mr. Miller sustained the damages hereinbefore alleged.

### AS AND FOR A SECOND CLAIM FOR RELIEF
42 U.S.C. § 1983/Fourteenth Amendment
(Against Defendant City)

50.    Plaintiff repeats and realleges the foregoing paragraphs as if the

same were fully set forth at length herein.

51.    Defendant City, through DOC, and acting under the pretense and

color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice

of staff brutality and retaliation by DOC correction officers at the time of plaintiff's

beating and death. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice or custom and led to plaintiff's death.

52. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating and died, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

53. As a direct and proximate result of the policy, practice and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### Assault and Battery
### (Against All Defendants)

54. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

55. In physically assaulting and killing Mr. Miller, the individual defendants, acting in their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

56. The assault and battery by these defendants was unnecessary and unwarranted in the performance of their duties as DOC officers and constituted an unreasonable and excessive use of force.

57. Defendant City, by its officers, agents, servants, and employees, was responsible for plaintiff's assault and battery. Defendant City, as employer of each

13

of the individual and DOC Doe Defendants, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.

58.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### Wrongful Death
### (Against All Defendants)

59.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

60.     By reason of the foregoing, and in light of the extensive physical injuries found present on his body at the time of the autopsy, Mr. Miller experienced conscious pain and suffering prior to his death.

61.     By reason of the foregoing, the statutory distributees of Mr. Miller's estate sustained pecuniary and non-economic loss resulting from the loss of love, comfort, society, attention, services and support.  Defendants are liable to plaintiff for the wrongful death of Mr. Miller.

62.     As a consequence, plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### Negligent hiring/training/discipline/retention of
### Employment Services
### (Against Defendant City)

63.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

64.     Defendant City, through the DOC, owed a duty of care to Mr. Miller to prevent the conduct alleged, because under the same or similar circumstances a

reasonable, prudent and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

65.    Upon information and belief, all of the individual defendants and DOC Doe Defendants were unfit and incompetent for their positions.

66.    Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants and DOC Doe Defendants were potentially dangerous.

67.    Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused plaintiff's injuries and death.

68.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
42 U.S.C. § 1983/Due Process
Brought in Ms. Miller's Individual Capacity
(Against All Individual Defendants)

69.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

70.    Ms. Miller, in her individual capacity and as Mr. Miller's mother, had a liberty interest in his familial companionship and society.

71.    By reason of the foregoing and by killing Mr. Miller, defendants are liable to plaintiff in her individual capacity for depriving her of this liberty interest without due process of law.

72.    As a consequence, plaintiff, Ms. Miller, in her individual capacity, has suffered damages in an amount to be determined at trial.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
New York State Constitution, Art. I, § 7
Brought in Ms. Miller's Individual Capacity
(Against All Defendants)

73.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

74.     Ms. Miller, in her individual capacity and as Mr. Miller's mother, had a liberty interest in his familial companionship and society.

75.     By reason of the foregoing and by killing Mr. Miller, defendants are liable to plaintiff in her individual capacity for depriving her of this liberty interest without due process of law, thus depriving her of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 7 of the New York Constitution.

76.     Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as City and/or DOC officers, agents, or employees.  Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.

77.     Defendant City, by its officers, agents, servants, and employees, was responsible for the deprivation of Ms. Miller's state constitutional rights.  Defendant City, as employer of each of the individual defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

78.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF
New York State Constitution, Art. I, § 12
(Against All Defendants)

79.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

80.     By reason of the foregoing, and by using excessive force against Mr. Miller, and killing him, defendants deprived him of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 12 of the New York Constitution.

81.     In addition, upon information and belief, defendants conspired among themselves to deprive Mr. Miller of his constitutional rights secured by Article I, § 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy.

82.     Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as City and/or DOC officers, agents, or employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Miller of his constitutional rights secured by Article I, § 12 of the New York Constitution.

83.     Defendants City, by its officers, agents, servants, and employees, was responsible for the deprivation of Mr. Miller's state constitutional rights. Defendant City, as employer of each of the individual defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

17

84.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A NINTH CLAIM FOR RELIEF
Negligence
(Against All Defendants)

85.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

86.    Defendants owed a duty of care to plaintiff.

87.    Defendants breached that duty of care by assaulting, beating, and using gratuitous, excessive, sadistic, and unconscionable force against Mr. Miller, resulting in his death, and failing to prevent the officer defendants from doing the same.

88.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

89.    All of the foregoing occurred without any fault or provocation on the part of plaintiff.

90.    Defendant City, by its officers, agents, servants, and employees, was responsible for the plaintiff's arrest, detention, and imprisonment during this period of time. Defendant City, as employer of the defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(A)    an order awarding compensatory and damages in an amount to be determined at trial;

(B)    an order awarding punitive damages in an amount to be determined at trial;

(C)    reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(D)    directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: May 16, 2008
        New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, N.Y. 10019
(212) 763-5000

By: _Jonatha S Abady_
    Jonathan S. Abady (JSA 5147)
    Kennisha A. Austin (KA 1269)

LEGAL AID SOCIETY
PRISONERS' RIGHTS PROJECT
199 Water Street
New York, New York 10038
(212) 577-3530
Jonathan S. Chasan (JSC 9018)
Mary Lynne Werlwas (MLW 6403)

*Attorneys for Plaintiff*